UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

S.A., *by her guardians and parents, J.A. and M.A.*;
J.A. and M.A.,

　　　　　　Plaintiffs,

　　　　　　　　　　　　　　　　　　Case No. 25-cv-790-pp

　　　v.

AETNA HEALTH OF ILLINOIS
*d/b/a Aetna Health Insurance Company*
and BLUE CROSS BLUE SHIELD OF ILLINOIS,

　　　　　　Involuntary Plaintiffs

　　　v.

OCONOMOWOC DEVELOPMENTAL TRAINING
CENTER OF WISCONSIN, LLC, *d/b/a Genesee Lake School*;
MYPATH SUPPORT SERVICES, LLC, *d/b/a MyPath*;
MYPATH;
OCONOMOWOC RESIDENTIAL PROGRAMS, INC.,
BOARD OF EDUCATION OF MAINE TOWNSHIP
HIGH SCHOOL DISTRICT 207;
JOHN/JANE DOE #1-5 and ABC INSURANCE COMPANY,

　　　　　　Defendants.

**ORDER DENYING PLAINTIFFS' MOTION TO STRIKE (DKT. NO. 29),
GRANTING GLS DEFENDANTS' MOTION TO COMPEL ARBITRATION
(DKT. NO. 21), GRANTING DEFENDANT BOARD'S MOTION TO STAY
(DKT. NO. 25), COMPELLING ARBITRATION AND STAYING AND
ADMINISTRATIVELY CLOSING CASE**

On June 2, 2025, the plaintiffs filed a complaint alleging that the

defendants had subjected S.A., a student diagnosed with autism spectrum

disorder residing at a facility operated by the defendants, "to repeated,

unnecessary, and unreasonable physical and chemical interventions and

1

restraints" that "resulted in physical injuries, psychological trauma, and significant behavioral regression." Dkt. No. 1 at ¶¶3-4. Defendants Oconomowoc Developmental Training Center of Wisconsin, MyPath Support Services, My Path and Oconomowoc Residential Programs (the GLS defendants) have moved to compel arbitration and stay the case. Dkt. No. 21. The plaintiffs oppose the motion, dkt. no. 32, and separately have moved to strike the defendants' motion or impose sanctions, dkt. no. 29. Defendant Board of Education of Maine Township High School District 207 (the Board) has moved to stay or transfer the case to the Northern District of Illinois. Dkt. No. 25. The plaintiffs and the Board have stipulated that the outcome of that motion is contingent on the court's ruling on the motion to compel arbitration. Dkt. No. 36.

The court will deny the plaintiffs' motion to strike, grant the GLS defendants' motion to compel arbitration and grant the Board's motion to stay. The court will stay this case pending the outcome of the arbitration.

## I.    Background

The plaintiffs filed a complaint, dkt. no. 1, and shortly afterward amended the complaint to add Oconomowoc Residential Programs, Inc. as a defendant, dkt. no. 2. The plaintiffs—S.A. by and through her parents J.A. and M.A., as well as J.A. and M.A. in their individual capacities—allege that S.A. is an eighteen-year-old girl with developmental disabilities including autism. Dkt. No. 2 at ¶26. The plaintiffs allege that on September 1, 2021, the Board placed S.A. at Genesee Lake School, a private residential care center for youth with

2

disabilities, operated by the GLS defendants. Id. at ¶¶27–28. The plaintiffs allege that the GLS defendants did not provide S.A. with the necessary accommodations described in S.A.'s Individualized Education Program plan. Id. at ¶¶29-–32. They allege that Genesee Lake School staff instead subjected S.A. to inappropriate physical and chemical interventions and restraints over a period of several months. Id. at ¶¶32–34. The plaintiffs contend that J.A. and M.A. became aware of the alleged abuse on August 5, 2022 and immediately removed S.A. from Genesee Lake School. Id. at ¶¶35–37. They assert that S.A. exhibited signs of behavioral and psychological regression, which they attribute to her time at the school. Id. at ¶38. The plaintiffs bring claims under 42. U.S.C. §1983, Title II of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act Wis. Stat. §118.305 and Wis. Stat. §48.981, as well as tort claims of intentional infliction of emotional distress, negligent infliction of emotional distress, false imprisonment, negligence, negligent hiring and supervision, negligence *per se* and loss of society and companionship. Id. at ¶¶44–339.

On August 25, 2025, the GLS defendants filed a motion to compel arbitration and stay the proceedings. Dkt. No. 21. They argue that a service agreement between the parties contains a binding arbitration agreement that covers all disputes arising out of S.A.'s residency. Id. at ¶¶2–8. On October 6, 2025, the plaintiffs filed an opposition, dkt. no. 32, and a motion to strike the motion to compel, dkt. no. 29. The plaintiffs argue that the court should strike

the motion to compel because it contains insufficient and underdeveloped arguments and fails to comply with this court's Local Rules. Dkt. No. 30.

The GLS defendants filed several agreed requests for extensions of time by which to file a reply in support of their motion to compel, dkt. nos. 42, 44, 47, which the court granted, dkt. nos. 43, 46, 48. Notably, the GLS defendants did *not* file a request for an extension of time to respond to the plaintiffs' motion to strike. On December 10, 2025, the GLS defendants filed their reply in support of their motion to compel arbitration, dkt. no. 50, and a response to the plaintiff's motion to strike, dkt. no. 49. The plaintiffs filed a reply in support of their motion to strike but did not raise the issue of the GLS defendants' untimely response. Dkt. No. 53.

Meanwhile, on September 12, 2025, the Board filed a motion to stay the case or to transfer it to the Northern District of Illinois. Dkt. No. 25. The plaintiffs and the Board then filed a joint document stipulating that the resolution of the Board's motion is dependent on the court's ruling on the GLS defendants' motion to compel arbitration. Dkt. No. 36. The parties asked the court to defer further briefing on the Board's motion until it rules on the motion to compel arbitration. Id. at ¶7-8.

The court first addresses the plaintiffs' motion to strike the GLS defendants' motion to compel arbitration.

## II. Plaintiffs' Motion to Strike (Dkt. No. 29)

The plaintiffs argue that the court should strike the GLS defendants' motion to compel arbitration because it is short, underdeveloped and lacks

4

appropriate case law citations. Dkt. No. 30 at 3–4. They assert that the GLS defendants should not be allowed to expand their legal argument in a reply brief or to refile their motion after having viewed the plaintiffs' arguments in opposition. Id. at 4–5. The plaintiffs also contend that the GLS defendants did not comply with Civil Local Rule 7(a) (E.D. Wis.) because they did not provide a supporting memorandum with their motion. Id. at 5-6. According to the plaintiffs, the court can strike the GLS defendants' motion as a sanction for their failure to comply with the court's Local Rules. Id. at 7 (citing Gen. L.R. 83(f), Civil. L.R. 7(d)).

The GLS defendants' response to the motion to strike was due on October 28, 2025. The court did not receive their response until December 10, 2025—the same day that it received their reply in support of their motion to compel arbitration. The GLS defendants did not request an extension of time to file their response to the motion to strike, and the court never granted them an extension. Accordingly, the court will not consider the GLS defendants' response or the plaintiffs' reply.

Even though the court is treating the plaintiffs' motion to strike as unopposed, the court will not grant it. Motions to strike are disfavored because often they serve only to delay litigation. Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989). The plaintiffs' motion cites Rule 12(f) of the Federal Rules of Civil Procedure. Dkt. No. 29 at 1. Rule 12(f) states that "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." It does not

5

grant the court authority to strike an entire motion. See WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE, §1380; Fed. R. Civ. P. 7(a) (defining "pleadings" to include a complaint, counterclaim, crossclaim, third-party complaint, or reply to an answer). In their brief in support, the plaintiffs challenge the substance of the GLS defendants' legal argument. But an arguably poor legal argument is not grounds to strike under Rule 12(f). This is not a situation in which a party raised a new argument in a reply brief (thus depriving the opposing party of the opportunity to respond). In their lengthy response to the motion to compel, the plaintiffs have pointed out what they view as flaws in the GLS defendants' argument. As this court stated in Gomez v. V. Marchese & Co.—a case on which the plaintiffs rely—"[t]he court is not aware of any authority that would allow it to strike an opposition brief simply because the party against whom it was filed disagrees with its content." Gomez v. V. Marchese & Co., Case No. 20-cv-1802-pp, 2022 WL 3228047, at *4 (E.D. Wis. Aug. 10, 2022).

Nor is the GLS defendants' failure to comply with Civil L.R. 7 a ground for striking the motion. Although the court may, *sua sponte*, impose sanctions on a party for failing to comply with the Local Rules, General L.R. 83(f) states that "[a] party should not file a motion seeking sanctions for alleged noncompliance with a Local Rule unless the alleged violation is egregious or unfairly prejudicial." Filing a brief motion without a supporting memorandum is not "egregious." Nor is presenting an arguably weak legal argument unfairly prejudicial to the plaintiffs. If anything, it *benefits* the plaintiffs. If the

6

defendants' argument is as poor as the plaintiffs claim, they should be able to rebut it in their response brief.

The plaintiffs argue that the GLS defendants have the unfair advantage of being able to reply to the arguments the plaintiffs raise in their response brief. But that is simply the nature of motion practice; the moving party carries the burden, so the Local Rules permit that party to file a reply brief. If the court (or the members of the Local Rules committee) had considered the ability to present an argument in reply to be unfairly prejudicial, the court's rules would provide only for an opening brief and a response brief. There is no prejudice here.

The court will deny the plaintiffs' motion to strike the GLS defendants' motion to compel arbitration. Dkt. No. 29.

## III.    Defendants' Motion to Compel Arbitration (Dkt. No. 21)

A.    <u>Parties' Arguments</u>

The GLS defendants ask the court to compel arbitration and stay the case, asserting that the plaintiffs agreed to arbitrate any claims arising out of S.A.'s residency. Dkt. No. 21. They submit the parties' purported service agreement, which states that "[a]ll disputes arising out of or relating in any way to this Service Agreement or to any of Student's stay(s) and/or services at GLS SHALL BE RESOLVED BY BINDING ARBITRATION;" the terms of this agreement are fully stated on Exhibit A to the service agreement. <u>Id.</u> at ¶¶3, 5 (quoting Dkt. No. 22 at 3; <u>see also</u> Dkt. No. 41 at 3 (redacted version)). The defendants state that the plaintiffs agreed to the terms of the arbitration

7

agreement by virtue of their signatures on the Service Agreement and on the arbitration agreement contained in Attachment A. Id. at ¶8. The GLS defendants argue that the Federal Arbitration Act (FAA) requires the court to compel arbitration where, as here, the parties have a written arbitration agreement, the dispute is within the scope of that agreement and a party refuses to submit to arbitration. Id. at ¶¶10–11. The GLS defendants appear to have anticipated an argument about the plaintiffs' residency; they contend that if the plaintiffs reside in Illinois and seek to conduct arbitration in the Northern District of Illinois, the court could dismiss this case for improper venue rather than compelling arbitration. Id. at ¶¶12–13. But because dismissing the case would not resolve the question of arbitrability, the GLS defendants ask the court to stay this case and compel the parties to arbitrate. Id. at ¶15.

The plaintiffs respond that the claims alleged are outside the scope of the arbitration agreement. Dkt. No. 32 at 4–5. They argue that the arbitration agreement is restricted to claims "arising out of or in any way relating to" the arbitration agreement, the service agreement and S.A.'s stay and services at Genesee Lake School. Id. at 5. According to the plaintiffs, the GLS defendants' alleged use of chemical and physical restraints is "wholly outside and unrelated to the services S.A. contracted to receive;" they assert that no reasonable person would agree to submit such claims to arbitration. Id. at 5–6. The plaintiffs contend that torts which were not reasonably foreseeable at the time of contracting cannot be considered within the scope of the arbitration agreement. Id. at 6–7 (citing Aiken v. World Finance Corp. of South Carolina,

8

644 S.E.2d 705, 708 (S.C. 2007); <u>Precision Homes of Ind., Inc. v. Pickford</u>, 844 N.E.2d 126, 133 (Ind. Ct. App. 2006); <u>Smith v. Captain D's, LLC</u>, 963 So. 2d 1116, at ¶17 (Miss. 2007)).

The plaintiffs contend that the arbitration agreement is invalid and unenforceable because it lacks the integral, essential term of an arbitral forum. <u>Id.</u> at 7–8. They argue that although the contract states that the FAA and federal procedural rules apply to the contemplated arbitration, it does not identify an arbitral forum such as JAMS or AAA. <u>Id.</u> at 9. The plaintiffs assert that the rules of each arbitral forum vary widely, so identifying an arbitral forum now would be "rewriting" the parties' agreement. <u>Id.</u> They maintain that the arbitral forum is "so central" to an arbitration agreement that the absence of a term identifying one means that the court must invalidate the entire agreement for indefiniteness. <u>Id.</u> at 9–10.

The plaintiffs also argue that the arbitration agreement is void because it is against public policy. <u>Id.</u> at 10. They assert that Wisconsin has a strong public policy against caregiver abuse and neglect as codified in various state laws and regulations. <u>Id.</u> at 11. The plaintiffs argue that compelling a student who allegedly was abused to arbitrate these claims would go against Wisconsin's public policy and frustrate the state's regulatory scheme. <u>Id.</u> at 11–12.

The plaintiffs next argue that the arbitration agreement's delegation clause is unconscionable. <u>Id.</u> at 12. According to the plaintiffs, a contract is procedurally unconscionable when there was "no real and voluntary meeting of

9

the minds" between the contracting parties. Id. at 13 (quoting Coady v. Cross Country Bank, Inc., 299 Wis. 2d 420, 440 (Wis. Ct. App. 2007)). The plaintiffs argue that the GLS defendants had greater bargaining power because they are in the business of drafting such agreements, while the plaintiffs allegedly lacked all knowledge or understanding of arbitration agreements at the time they entered into the contract. Id. at 13–14. They contend that requiring S.A. to sign the agreements as well as her mother "was just cruel" and that she had no way of understanding the terms of the agreement. Id. at 14. The plaintiffs assert that they had no choice but to sign the arbitration agreement because S.A. had no other options for residential placement. Id. The plaintiffs say that the arbitration agreement and delegation clause were not explained to them and that they were forced to sign the documents quickly in order to complete S.A.'s enrollment. Id. at 14–15. The plaintiffs argue that the contract also stated that Genesee Lake School would discharge S.A. if the plaintiffs rescinded their agreement to arbitrate. Id. at 15. The plaintiffs contend that the unequal bargaining power and lack of meaningful choice makes the contract procedurally unconscionable. Id. at 15–16.

The plaintiffs argue the contract is substantively unconscionable. Id. at 16. They argue that the terms of the arbitration agreement are one-sided and oppressive to them. Id. They assert that because the GLS defendants drafted the delegation clause, the terms of the delegation clause must favor the GLS defendants. Id. at 16–17. The plaintiffs maintain that the term related to selecting an arbitration panel is unfair because the parties each may choose

one arbitrator, but must agree on a third arbitrator. Id. at 17. According to the plaintiffs, this means that the GLS defendants could delay the proceedings until the plaintiffs agree to the GLS defendants' preferred third arbitrator. Id. The plaintiffs also assert that the terms limiting the arbitration to five days and requiring that it take place within 100 miles of Genesee Lake School unfairly favor the GLS defendants. Id. at 17–18. The plaintiffs contend that these limitations would prevent them from adequately presenting their case to the arbitration panel. Id. at 18. They argue that other terms of the contract unfairly benefit the GLS defendants, such as the terms preventing the agreement from being construed against the drafter or that waiver of a breach does not constitute waiver of another breach. Id. at 18–19. The plaintiffs assert that for all these reasons, the arbitration agreement is substantively unconscionable. Id. at 19.

The plaintiffs next argue that the GLS defendants waived their right to enforce the delegation clause because they did not mention that clause in their motion. Id. at 20. The plaintiffs repeat the arguments from their motion to strike, asserting that the GLS defendants' motion is underdeveloped and that the court must consider to have been waived any arguments in reply. Id. at 21.

The plaintiffs argue that to the extent that the GLS defendants' motion seeks dismissal for improper venue, the court should deny it. Id. at 22. They assert that their residence is not relevant to whether venue in this district is proper. Id. They also argue that the proper procedure when compelling

11

arbitration is to stay the pending case for the duration of the arbitration, rather than dismissing the case outright. Id. at 22–23.

The plaintiffs argue that the court should prevent the GLS defendants from presenting new arguments or evidence in their reply brief. Id. at 23. They contend that the GLS defendants should be limited to the bare-bones arguments made in their opening brief rather than being allowed to respond to the multitude of defenses the plaintiffs raise in opposition. Id.[1]

The GLS defendants reply that the plaintiffs have not established that the delegation clause is procedurally unconscionable. Dkt. No. 50 at 4. They argue that M.A.'s approximate age, educational background and work experience suggest that she was capable of reading and understanding the terms of the arbitration agreement, as well as the clauses affirming that M.A. had read the agreement. Id. at 4–5. The GLS defendants state that they were not aware that S.A. could not attend another school at the time the contract was executed, so they did not believe they were bargaining from an advantageous position. Id. at 5. They say that it is not clear whether S.A. could have stayed at home or waited to apply to some other residential entity if her parents had decided not to accept the arbitration agreement. Id. at 6–7. They assert that the plaintiffs have not established that they had no other choice but

---

[1] The plaintiffs attempt to "reallege and incorporate their arguments contained in their Motion to Strike and their supporting papers." Dkt. No. 32 at 23 n.7, 8. The Federal and Local Rules, which the plaintiffs zealously seek to enforce against the GLS defendants, do not allow for such incorporation. "Incorporating" the plaintiffs' other materials would result in their response brief far exceeding the thirty-page limit for supporting briefs. The court will consider only the arguments properly presented in the plaintiffs' response brief.

Case 2:25-cv-00790-PP    Filed 02/03/26    Page 12 of 23    Document 54

to sign the agreement. Id. at 7. The GLS defendants say it is unlikely that M.A. truly did not understand what she was signing, and they assert that if she was uncertain about any terms, she should have made reasonable efforts to understand them. Id. at 7–8.

The GLS defendants assert that the delegation clause is not substantively unconscionable. Id. at 8. They argue that the plaintiffs have not cited a single case where a court found a similar delegation clause unconscionable. Id. They contend that all the terms that the plaintiffs say favor the GLS defendants—arbitrator selection, location and timing, among others— apply equally to both parties to the contract, so there is no advantage to either party. Id. at 8–9.

The GLS defendants argue that the allegations in this case arise out of S.A.'s residency and thus are within the scope of the arbitration agreement. Id. at 9–10. They maintain that the plaintiffs' complaint brings claims for violations of Wisconsin law governing residential and related services, implying that this case involves claims arising out of S.A.'s residency. Id. at 10–11. The GLS defendants argue that the arbitration agreement is not indefinite or void as to public policy, id. at 11–13, but primarily assert that these arguments are premature absent a showing that the delegation clause is unconscionable, id. at 2.

B.    Legal Standard

Under the FAA, "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." Henry Schein, Inc. v.

Archer and White Sales, Inc., 586 U.S. 63, 67 (2019) (citing Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67 (2010)). The FAA requires a court to compel arbitration when there is (1) "a written agreement to arbitrate," (2) "a dispute within the scope of the arbitration agreement" and (3) "a refusal to arbitrate." Zurich Am. Ins. Co. v. Watt Indust., Inc., 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. §4). The contracting parties also can delegate to an arbitrator "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Ctr., 561 U.S. at 68–69. The Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." Henry Schein, 586 U.S. at 69. "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." Id.

The Supreme Court views delegation clauses as essentially a separate agreement to arbitrate, meaning that challenges to the underlying arbitration agreement itself cannot invalidate the delegation clause. Rent-A-Ctr., 561 U.S. at 71–72. Unless the plaintiffs "challenged the delegation provision specifically, [the Court] must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." Id. at 72. A delegation clause may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." Id. at 68.

C.     Analysis

The parties' arbitration agreement states as follows:

> Any and all claims or controversies arising out of or *in any way*
> relating to this Arbitration Agreement, the Service Agreement,
> and/or any of the Student's stay(s) and/or services at GLS,
> including disputes regarding the making, execution, validity,
> enforceability, voidability, unconscionability, severability, scope,
> arbitrability, interpretation, waiver, duress, preemption, or any
> other defense to the enforceability of this Arbitration Agreement,
> whether arising out of State or Federal law, whether now existing or
> arising in the future, whether for statutory, compensatory or
> punitive damages and whether sounding in breach of contract, tort
> (i.e., negligence or wrongful death), or breach of statutory duties
> (including, without limitation, any claim based on Students' Rights
> or a claim for unpaid GLS charges), irrespective of the basis for the
> duty or of the legal theories upon which the claim is asserted, shall
> be submitted to binding arbitration.

Dkt. Nos. 22 at 5, ¶B (emphasis in original); 41 at 5, ¶B (redacted version). This language clearly and unmistakably contains a clause delegating issues of arbitrability to an arbitrator: "disputes regarding the making, execution, validity, enforceability, voidability, unconscionability, severability, scope, *arbitrability*, interpretation, waiver, duress, preemption, or any other defense to the enforceability of this Arbitration Agreement . . . shall be submitted to binding arbitration." Id. (Emphasis added.)

The plaintiffs present several arguments in support of their contention that the entire arbitration agreement is invalid or unenforceable. But the plaintiffs must demonstrate that the *delegation clause*—which delegates issues of arbitrability to the arbitrator—is unenforceable. The plaintiffs' arguments that their claims are not within the scope of the arbitration agreement, that the arbitration agreement is against public policy and that the arbitration

15

agreement is indefinite, all are claims regarding *arbitrability*, which, under the contract, must go to the arbitrator. See K.F.C. v. Snap Inc., 29 F.4th 835, 838 (7th Cir. 2022) (absent a finding that the delegation clause is unenforceable, challenges to the arbitration agreement's validity are delegated to the arbitrator); Grasty v. Colo. Tech. Univ., 599 F. App'x 596, 598 (7th Cir. 2015) (questions of the arbitration agreement's scope were properly delegated to the arbitrator).

The plaintiffs' arguments that the entire arbitration agreement is procedurally or substantively unconscionable also must go to the arbitrator. The court will not address the plaintiffs' arguments as to the enforceability or applicability of the *entire* arbitration agreement as those issues have been delegated to the arbitrator. At this early stage, only challenges to the *delegation clause itself* are properly before the court.

The plaintiffs assert the GLS defendants waived the right to enforce the delegation clause but identify no authority establishing that a party can waive enforcement of a delegation clause while simultaneously seeking to compel arbitration. And if the law did require an explicit invocation of the clause, the GLS defendants have done so. In their motion, the GLS defendants quoted the arbitration agreement, including the language that states that threshold questions of validity, scope and enforceability are delegated to the arbitrator. Dkt. No. 21 at ¶6. The GLS defendants state that the plaintiffs agreed to these terms and ask the court to compel arbitration "pursuant to the terms" of the

16

arbitration agreement. Id. at ¶¶8, 11, 15. Enforcing the terms of the arbitration agreement includes enforcing the delegation clause. There is no waiver.

The plaintiffs' primary argument regarding the delegation clause is that it is unconscionable. Under Wisconsin law,[2] an agreement is unconscionable if there is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Discount Fabric House of Racine, Inc. v. Wis. Tel. Co., 117 Wis. 2d 587, 601 (Wis. 1984) (citation modified). The plaintiffs must demonstrate that the contract is both procedurally and substantively unconscionable. Wis. Auto Title Loans, Inc. v. Jones, 290 Wis. 2d 514, 533 (Wis. 2006). "Procedural unconscionability requires consideration of the factors bearing on a meeting of the minds, while substantive unconscionability pertains to the reasonableness of the contract terms themselves." Deminsky v. Arlington Plastics Machinery, 259 Wis. 2d 587, 609 (Wis. 2003) (internal quotations omitted). "To tip the scales in favor of unconscionability requires a certain quantum of procedural plus a certain quantum of substantive unconscionability." Discount Fabric, 117 Wis. 2d at 602.

The plaintiffs argue that the delegation clause is procedurally unconscionable because the GLS defendants presented it to the plaintiffs on a "take-it-or-leave-it" basis. But as the Seventh Circuit has acknowledged, form or "adhesion" contracts such as this generally are valid under Wisconsin law. See Scaffidi v. Fiserv, Inc., 218 F. App'x 519, 521 (7th Cir. 2007) (collecting

---

[2] The parties agree that Wisconsin law applies to the contract.

17

cases and rejecting argument that an arbitration agreement is unconscionable solely because it does not include an opt-out provision). "Standard-form agreements are a fact of life, and given § 2 of the Federal Arbitration Act, 9 U.S.C. § 2, arbitration provisions in these contracts must be enforced unless states would refuse to enforce all off-the-shelf package deals." Oblix, Inc. v. Winiecki, 374 F.3d 488, 491 (7th Cir. 2004). The fact that the service agreement was a "form" contract offered to the plaintiffs without a back-and-forth negotiation is not fatal.

Nor is the plaintiffs' argument that they were rushed to sign the arbitration agreement without understanding it. The plaintiffs contend that they had no other choice but to sign the service agreement because there were no other residential facilities that would accept S.A. The court is sympathetic to the plaintiffs' motivations to execute the contract quickly, but the plaintiffs had about five days to review and consider the documents. M.A. states that she received the contract on or around August 10, 2021; she and S.A. executed the documents on August 15, 2021. Dkt. No. 40 at ¶¶5, 12. The plaintiffs provided an email exchange with Josh Zuelke, a representative from Genesee Lake School, which confirms that the documents were sent to M.A. on August 10, 2021. Dkt. No. 34 at 3. Zuelke stated that "[a]s you work through the Adobe Sign paperwork that I had sent please feel free to reach out to me with any questions you might have." Id. Zuelke did not give the plaintiffs a deadline by which they needed to complete the paperwork. See id. The plaintiffs had several

18

days to consider the paperwork and Zuelke invited them to ask questions about it.

With their reply brief, the defendants also submitted a declaration from Zuelke stating that Zuelke spoke with M.A. and J.A. "multiple times over the course of several days regarding the service agreement and arbitration agreement." Dkt. No. 50 at 15, ¶2. The plaintiffs argue that the court should not allow the GLS defendants to "dispute Plaintiffs' arguments with new documents and evidence."[3] Dkt. No. 32 at 23. A party waives new arguments and evidence raised for the first time in a reply brief, but if the reply brief "merely responds to matters placed in issue by the opposition brief . . . reply papers—both briefs and affidavits—may properly address those issues." Baugh v. City of Milwaukee, 823 F. Supp. 1452, 1457 (E.D. Wis. 1993), aff'd, 41 F.3d 1510 (7th Cir. 1994). This court's Local Rules do not prohibit a moving party from submitting a declaration with a reply brief. Civil L.R. 7(c) ("[T]he moving party may serve a reply memorandum *and other papers* within 14 days from service of the response memorandum." (emphasis added)). It is not improper for the GLS defendants to use their reply brief and supporting papers to respond to arguments the plaintiffs raised in opposition.

---

[3] The plaintiffs also attempt to strike Zuelke's declaration via their reply brief in support of their motion to strike the GLS defendants' motion to compel. Dkt. No. 53 at 3–4. That is improper. As explained above, "[j]ust as undeveloped arguments are waived, so are arguments raised for the first time in reply briefs[,]" because they do not allow the opposing party the opportunity to respond. United States v. Williams, 85 F.4th 844, 849 (7th Cir. 2023) (citing White v. United States, 8 F.4th 547, 552 (7th Cir. 2021)).

19

That is what the GLS defendants have done here. In their response brief, the plaintiffs state that "M.A. received 50 pages of documents via e-mail and was forced to sign them without any explanation as to what she was signing" and that "Mr. Zuelke, GLS Defendants' Admissions Specialist, never informed M.A. a phone call was required so that they could go through the documents together and so that he could explain them to her in great detail to ensure she understood what was being filled out and signed." Dkt. No. 32 at 15. The GLS defendants' reply brief and Zuelke's declaration specifically respond to and rebut those allegations. See, e.g., Dkt. No. 50 at ¶2 ("I spoke on the phone with M.A. and/or S.A.'s father multiple times over the course of several days regarding the service agreement and arbitration agreement."), ¶3 ("Plaintiffs discussed many questions they had as to the agreements, and I believe I answered all of their questions."), ¶6 ("I would not have submitted Plaintiffs' application for approval until I had confirmed that Plaintiffs had all questions addressed and all documents and terms were generally understood by Plaintiffs."). The GLS defendants cannot be faulted for not including this declaration with their opening brief because they were not required to anticipate the plaintiffs' opposition arguments.

The plaintiffs had at least five days to consider the paperwork and had the opportunity to speak with Zuelke regarding that paperwork; based on Zuelke's declaration, they may even have exercised that opportunity. The plaintiffs have not established that they were forced to execute the documents without adequate time to consider them.

20

The plaintiffs also argue that the delegation clause was buried in the middle of a fifty-page packet of documents. They admit that due to the length of the documents and the purported time pressure, M.A. "did not review the documents that required only a signature" versus the fillable forms. Dkt. No. 32 at 16. M.A.'s failure to read the documents she signed is not evidence of unconscionability. See Hill v. Gateway 2000, Inc., 105 F.3d 1147 (7th Cir. 1997) ("A contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome."). The plaintiffs have not established that the delegation clause is procedurally unconscionable.

The lack of procedural unconscionability is fatal to the plaintiffs' argument. Discount Fabric, 117 Wis.2d at 602 (both procedural and substantive unconscionability must be shown). But the court briefly will touch on the plaintiffs' substantive unconscionability arguments, which primarily assert that the contract terms are one-sided in favor of the defendants. All the terms to which the plaintiffs object apply equally to both parties. See Scaffidi, 218 F. App'x at 521 (arbitration agreement not unconscionable where both parties were bound to arbitrate on the same terms). Both parties are bound to arbitrate all claims against the other. Both parties are subject to the same procedural rules and limitations agreed to in the contract, such as the location, timing and arbitrator selection provisions. Both the plaintiffs and the defendants are limited to presenting their case in five days. Both the plaintiffs and the defendants must agree on a third, neutral arbitrator. And both the plaintiffs and the defendants must conduct the arbitration within 100 miles of

21

Genesee Lake School's location—which, as the GLS defendants note, is less than 100 miles from the plaintiffs' purported residence in Illinois. These terms are not so one-sided as to be substantively unconscionable.

The plaintiffs have not shown that the delegation clause is unconscionable. All the plaintiffs' other arguments relate to issues that the parties have delegated to the arbitrator. Accordingly, the court will grant the GLS defendants' motion to compel arbitration and stay the case pending the outcome of that arbitration. The parties must arbitrate the plaintiffs' claims according to the terms of their arbitration agreement.

## IV. Board's Motion to Stay or Transfer (Dkt. No. 25)

The plaintiffs and the Board stipulate that if the court grants the GLS defendants' motion to compel arbitration and stays the claims against the GLS defendants, the court also should stay the claims against the Board during the arbitration. Dkt. No. 36 at ¶4. Because the court is compelling arbitration, the court will grant the Board's motion and will stay the claims against it pending the outcome of the arbitration.

## V. Conclusion

The court **DENIES** the plaintiffs' motion to strike. Dkt. No. 29.

The court **GRANTS** the GLS defendants' motion to compel arbitration. Dkt. No. 21.

The court **GRANTS** the Board's motion to stay. Dkt. No. 25.

The court **ORDERS** that this case is **STAYED** and **ADMINISTRATIVELY CLOSED** pending the arbitration of the plaintiffs' claims against the GLS

defendants. Within twenty-one days of the conclusion of the arbitration proceedings, any party may move to reopen the case and lift the stay, at which time all parties must file a joint status report informing the court of the outcome of the arbitration and their proposed next steps.

Dated in Milwaukee, Wisconsin this 3rd day of February, 2026.

BY THE COURT:

HON. PAMELA PEPPER
Chief United States District Judge